Edward H. Ellis, Inc., *v.* Hines, Appellant.

Argued March 18, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*M. Louise Rutherford,* with her *Fred C. Morgan,* Deputy Attorneys General, and *Claude T. Reno,* Attorney General, for appellant.

*F. Brewster Wickersham,* of *Metzger & Wickersham,* for appellee.

PER CURIAM, April 15, 1940:

The judgment is affirmed on the following from the opinion of Judge Fox:

"Upon petition of the plaintiff, we issued a writ of alternative mandamus directing the above mentioned defendant to show cause, if any he has, why the order made by him refusing to refer labor to the plaintiff at the Clark Valley Dam Federal Emergency Administration Public Works Project should not be rescinded and that

the defendant be ordered to make reference of labor to the plaintiff at the said dam according to the provisions of the Act of June 4, 1915, P. L. 833, 43 PS Sec. 607.*

"The defendant filed a return in which he averred inter alia that he refused to refer labor as requested by the plaintiff for the reason that the defendant acted in accordance with an order of the U. S. Secretary of Labor; that there existed at the said project a labor dispute of which the plaintiff had knowledge and that the defendant made an investigation and was informed that there was a labor dispute existing and that under the Act of June 4, 1915, supra, and also under the order of the U. S. Secretary of Labor he is in duty bound to refuse to furnish labor to the project; that he proceeded under the labor mediation act of 1937, P. L. 674, but could accomplish nothing on account of the refusal of the plaintiff to attend and join therein. . . .

* Section 16 of the Act provides: "Each person applying for employees at any public employment office shall file, in such form and manner as the director may require, a signed statement affirming or denying the existence of an industrial dispute, strike, or lockout at or in connection with the business or place of business for which such person is applying for help. Any citizen or employe may file at any public employment office a signed statement with regard to the existence of an industrial dispute, strike, or lockout affecting any business or trade. Each statement filed shall be exhibited in the public employment office, but not until it has been communicated to the employes affected if filed by employers, or to the employers affected if filed by citizen or employes. In case a reply to such a statement is received, it shall be exhibited, together with the original statement, in the public employment office; but no statement or reply thereto shall be so exhibited until it has been ascertained, upon investigation, that an industrial dispute, strike, or lockout does exist at or in connection with the business or place of business in question. No official of the bureau shall assist, in any manner whatsoever, any person, firm, association, or corporation who is a party to an industrial dispute, strike, or lockout. Each person applying to any public employment office for help or employment shall give such information as the director may require."

"Copious testimony was taken in hearings from which we find the following facts: . . .

"On the 19th day of April, 1939, the plaintiff entered into a contract with the City of Harrisburg and for a certain consideration did agree to construct a dam in Clark Valley, Pennsylvania. . . . Under date of April 27, 1939, said contract was approved by the Federal Government through its agency, Federal Emergency Administration of Public Works, commonly called P. W. A. Prior thereto, namely, on the 13th day of December, 1938, the City of Harrisburg, by adoption of proper resolution, did accept the offer of P. W. A. to aid in financing the construction of the aforesaid Project in the amount of 45% of the cost thereof, not to exceed the sum of $1,236,000.

"According to Paragraph 5 of the General Conditions of the aforesaid contract, . . . the plaintiff agreed with respect to all persons employed to (a) give preference to those on the public relief rolls who are available and qualified, and (b) to the fullest extent possible secure labor chosen by local employment agencies designated by the United States Employment Service or through local Labor Unions, if such workers are desired by the employer. Plaintiff commenced work on said project, April 30, 1939, and from that time until July 12, 1939, secured skilled and unskilled labor according to the provisions of paragraph 5 above through the Pennsylvania State Employment Service, a branch of the defendant Department of Labor and Industry, Commonwealth of Pennsylvania, which had been designated as an employment agency of the United States Employment Service. On the 5th or 6th day of July, 1939, the plaintiff received notice from Calvin R. Stafford, who had charge of the Harrisburg office of the defendant relating to the matter of employment, to the effect that he had been notified by the president of the Harrisburg Building Trades Construction Council and one Stapleton of the P. W. A. that a labor dispute existed on the

job and that twenty-two men had been removed from the job as a result of this dispute. Upon receipt of said notice Stafford on the 5th or 6th of July issued an order refusing to refer labor to the aforesaid project. On the morning of July 5, 1939, six carpenters . . . and one laborer, . . . all employees of one Moses a subcontractor, were "Pulled off" the job by the representatives of the Local Labor Unions associated with the Harrisburg Building Trades Council, A. F. of L. affiliates. None of the carpenters or laborers, employees of Moses, a subcontractor, made any complaint to either Ellis or Harry Deith timekeeper of the plaintiff corporation of any of their grievances prior to leaving the job on the morning of July 5, 1939. Neither any of plaintiff's employees, nor those of the sub-contractor Moses, nor any of the Union representatives, up to the time of the meeting held in defendant's office on July 20, 1939, made any complaints to Ellis or Deith or Moses as to grievances affecting hours, wages or labor conditions. Edward H. Ellis, President of the plaintiff corporation never learned of any grievances affecting hours, wages and labor conditions on the project under plaintiff's contract until the meeting held in the office of the defendant, July 20, 1939. . . . If an industrial dispute was actually in existence it arose as a result of the relationship of employer and employee between Charles S. Moses and his employees, . . . and not the plaintiff. . . .

### Discussion

"The Legislature has passed four acts of assembly, to wit, 1915, supra, 1937, P. L. 674; 1937, P. L. 1168, and 1937, P. L. 1198, all of which are in force and effect except the first ten sections of the Act of 1915, supra, commonly referred to in these proceedings as and hereinafter called the Brumbaugh Act. The latter act and the Mediation Act, . . . supra, are directly involved in this case. All of these acts are important to Labor, Industry and the Public. It is important in all phases,

the administration, quasi-judicial or judicial, that they be fairly, impartially and exhaustively followed and considered.

"The defendant contends, particularly as to the Brumbaugh Act, that the provisions thereof are not mandatory but directory. . . .

"We are of opinion that the pertinent sections of the Brumbaugh and Mediation Acts, supra, are mandatory.

"It appears from the evidence and we have found as a fact that no representatives of the employees were chosen and none were requested to be chosen. Representatives of labor unions informed the secretary that there was a strike on the project. No statement was filed in the public employment office with regard to the existence of an industrial dispute, or strike; no communication was had between the department and the employee nor to the employer; no investigation was made by the department at any time. An attempt seems to have been made at mediation, but none of the parties, employees or employer had invoked the services of the department in mediation. There is no evidence that the defendant put itself in communication with the parties to any controversy. What the evidence does disclose is that certain employees were ordered by a representative of a labor organization to quit, which they did and, within a week thereafter, were again employed in some other work at equal wages and there was subsequently called by the department a meeting, on July 20, 1939, which the Secretary or his duly appointed representative, the plaintiff and a few representatives of labor organizations attended, but no representatives of the employees attended, (nor is there any evidence that they were requested to attend). At the said meeting there was an endeavor to persuade the plaintiff to unionize his project, which the plaintiff refused to do. At the time of this meeting which was held in the office of the Secretary, no strike existed. The men had secured employment elsewhere and had abandoned their connection as employees of Moses. At that meet-

ing, particularly, from the evidence, the conclusion is irresistible that the object of that meeting was not to get the men to return to work, but to have the plaintiff company unionize the industry.

"The mandatory provisions of the Brumbaugh and Mediation Acts had not been complied with. The defendant was refusing to certify workmen applying for work to Moses the sub-constactor and to the plaintiff corporation. If a labor dispute did exist the testimony discloses that it did not exist between the plaintiff and his employees, but between Moses the sub-contractor and his employees. . . .

"The contention of the defendant is that the plaintiff has an adequate remedy at law in that he can bring an action against the city for the money he is entitled to under his contract and also that the plaintiff having averred coercion to unionize the plant he has his remedy under the Labor Relations Act. Neither one of these contentions is applicable for the reason that the prayer of the plaintiff is for a rescission of the refusal to certify labor who are applying for work. The gravamen of the instant case is the right to get labor, not to recover money.

"By the nonconformance with the Brumbaugh and Mediation Acts, great injury has been done; men who wished to be employed through the department could not have their wishes gratified by securing employment on the project; the plaintiff could not secure labor under requisition, as it had contracted with the city to do, and had a right to receive. Injury was done to the plaintiff and the City of Harrisburg in that payment of the money by the Federal Government as it had agreed to do, was withheld and since July 5, 1939, still remains unpaid.

"We are of the opinion that the plaintiff has the right to have certified by the defendant to him properly qualified workmen for the completion of the project; the defendant owes the duty to the plaintiff to certify qual-

ified workmen applying for work; there is not an adequate remedy at law for the plaintiff to obtain the workmen embraced in his contract with the City of Harrisburg.

"Wherefore we are of the opinion that the prayer of the plaintiff should be granted and a writ of peremptory mandamus be issued."

Judgment affirmed at appellant's cost.